```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| PAUL JOSEPH FAGO and SUSAN JEAN FAGO, | Civil No. 14-6482 (NLH) |
| Appellants, | **OPINION** |
| v. | |
| TWO ANCO DRIVE ASSOCIATES, | |
| Appellee. | |

**APPEARANCES**:

NEIL I. STERNSTEIN
FIVE ABERDEEN PLACE
WOODBURY, NJ 08096
     On behalf of appellants

WARREN S. WOLF
GOLDBERG & WOLF, LLC
1949 BERLIN ROAD, STE 201
CHERRY HILL, NJ 08003
     On behalf of appellee

**HILLMAN, District Judge**

   Pending before the Court is the debtors' appeal of the bankruptcy court's order denying the debtors' fifth modified Chapter 13 plan, and creating a priority administrative claim in favor of the debtors' landlord. For the reasons expressed below, the decision of the bankruptcy court will be affirmed, and the debtors' appeal will be dismissed.

                            **BACKGROUND**

   Appellants, Paul and Susan Fago, are cabinetmakers who, in

May 2001, leased a nonresidential property owned by appellee, Two Anco Drive Associates (TADA), to conduct their business. The lease was to expire on April 30, 2004.  An amendment to the lease was signed on August 8, 2005, for an additional lease term of October 1, 2005 through September 30, 2007.  The record does not show that the Fagos and TADA entered into another lease amendment, but the Fagos continued their tenancy past October 1, 2007.  According to TADA, the Fagos then began failing to make their monthly lease payments, and by November 2010, the Fagos had failed to pay rent to TADA for over twelve months.  On December 14, 2010, TADA filed a complaint in New Jersey Superior Court, seeking to evict the Fagos and obtain a judgment in possession.  The Fagos were provided until January 1, 2011 to pay TADA a stipulated amount of $16,480.00 in order to have the complaint dismissed.

　　On January 13, 2011, the Fagos and TADA signed a court-provided form titled, "Consent to Enter Judgment (Tenant Remains)."  The agreement provided that the Fagos would make four monthly installments of $4,020.00 on February 1, 2011, March 1, 2011, April 1, 2011, and May 1, 2011.  The agreement also provided, "It is understood that landlord will provide written notice and tenant will have the opportunity to cure within one week."  Further, the Fagos agreed to pay $1,600.00

2

each month for rent as required by the rental agreement, in addition to the four monthly payments.  The agreement explained:

> 4. All payments made during the term of this agreement shall be applied first to the rents that become due after today, and then they shall be applied to pay the balance of the arrears stated in paragraph 1. If the Tenant makes all payments required in paragraph 2b of this agreement, the Landlord agrees not to request a warrant of removal. If the Tenant does not make all payments required in paragraph 2b of this agreement, the Tenant agrees that the Landlord, with notice to the tenant, may file a certification stating when and what the breach was and that a warrant of removal may then be issued by the clerk.
> THIS MEANS THAT IF THE TENANT FAILS TO MAKE ANY PAYMENT THAT IS REQUIRED IN PARAGRAPH 2b OF THIS AGREEMENT, THE TENANT MAY BE EVICTED AS PERMITTED BY LAW AFTER THE SERVICE OF THE WARRANT OF REMOVAL.
>
> 5. This agreement shall end when the Tenant has paid the full amount of rent stated in paragraph 1 and then the judgment shall be vacated and the complaint shall be dismissed.

The Fagos made a payment of $1,440.00 in February 2011, and no payments thereafter.  On May 11, 2011, the Fagos filed a voluntary petition for bankruptcy under Chapter 13.[1]  The Fagos filed an original plan and four modified plans.  In all of these plans, the Fagos listed TADA as a creditor holding a secured

---

[1] A chapter 13 bankruptcy is also called a wage earner's plan. It enables individuals with regular income to develop a plan to repay all or part of their debts.  Under this chapter, debtors propose a repayment plan to make installments to creditors over three to five years.  See 11 U.S.C. § 1322.

3

claim, indicated that they had an unexpired lease with TADA, and that they assumed the lease.  In their fifth plan, approved by the bankruptcy court on June 8, 2012, the Fagos provided TADA with a priority claim in the amount of $24,413.00, and listing the reason for providing TADA with a priority claim as "cure rent for commercial property."  The Chapter 13 plan form specifically noted that priority claims approved by the trustee and bankruptcy judge were to be paid in full before payment to other creditors.

   The Fagos remained on the property, but they failed to pay rent for August, September, and October 2012.  On November 6, 2012, TADA filed a motion for relief from the automatic stay because of the Fagos' failure to pay their current rent payments, and their failure to make any payments under their June 2012 plan to cure the pre-petition rent arrearage.  Even though the Fagos paid TADA $6,400 in November 2012, which they claim caught them up on post-petition rent, the bankruptcy court granted TADA's motion to lift the stay so that TADA could start eviction proceedings.  Before TADA could proceed on its eviction, the Fagos filed a motion to reinstate the stay.  On January 29, 2013, the Fagos withdrew that motion, and on January 31, 2013, the Fagos voluntarily left the property.

   On February 25, 2013, the Fagos filed their sixth Chapter

13 plan.  In their newest plan, the Fagos proposed to eliminate TADA's priority claim, stating that because they were evicted, they no longer had an unexpired lease.  TADA objected to the Fagos' modified plan, noting that it was still owed $19,708.58 out of the $24,413.00 claim.  On September 15, 2014, the bankruptcy court granted TADA a priority administrative claim of $24,413.00, with a balance owed of $19,708.58, and ordered that the administrative claim could not be reduced by any subsequent plan.  On September 19, 2014, the bankruptcy court dismissed the Fagos' Chapter 13 case for failing to submit a feasible plan, and for failing to make all required pre-confirmation payments to the trustee.

The Fagos have filed the instant appeal, arguing that the bankruptcy court erred when it denied their final modified plan and granted TADA an administrative claim.  TADA argues that the bankruptcy court did not err, and the Fagos' appeal should be dismissed.

## DISCUSSION

### A.  Jurisdiction and Standard

This Court has jurisdiction over the appeal from the bankruptcy court's September 15, 2014 order pursuant to 28 U.S.C. § 158(a), which provides in relevant part: "The district courts of the United States shall have jurisdiction to hear

5

appeals from final judgments, orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."

In reviewing a determination of the bankruptcy court, the district court subjects the bankruptcy court's legal determinations to plenary review, reviewing its factual findings for clear error, and considering its exercise of discretion for abuse thereof. In re United Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005).

B. Analysis

The primary issue that must be considered to resolve this appeal is the status of the lease between the Fagos and TADA. The Bankruptcy Code permits a debtor to assume or reject an unexpired lease. 11 U.S.C. § 365(a). A debtor would choose to assume an unexpired lease so that a landlord is prevented from seeking relief from the automatic stay and proceed with its remedies, which includes an action for possession of the premises. But where, as here, "there has been a default in an executory contract or unexpired lease of the debtor," the unexpired lease cannot be assumed unless, at the time of

6

assumption, "the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ." 11 U.S.C. § 365(b)(1).  If an unexpired lease is assumed by the debtor in possession and such action is approved by the court, such assumption and approval creates a new administrative obligation of the estate which must be paid as a first priority in distribution.  In re Juvennelliano, 464 B.R. 651, 653 (Bankr. D. Del. 2011) (citations omitted).  Damages resulting from the post-confirmation breach of an assumed lease give rise to an administrative expense claim, but the administrative claim should be allowed only to the extent that the assumed lease benefitted the estate.  Id.

In this case, the bankruptcy court, in accordance with 11 U.S.C. § 365, approved five Chapter 13 plans where the Fagos assumed the unexpired lease with TADA, and provided TADA with a priority claim in the amount to cure of their pre-petition default on the lease.  Presumably, the Fagos chose to assume the lease in order to avail themselves of the automatic stay, which would prevent TADA from commencing eviction proceedings based on the Fagos' default of the January 13, 2011 consent judgment, and allow them to continue operating their business.  In order to receive the protection of the automatic stay, however, the Fagos were required to promise to cure their default and provide TADA

7

with a priority claim.  The Fagos' first five Chapter 13 plans contained these provisions, and the Fagos remained on the TADA premises for about 18 months after filing bankruptcy.

When the Fagos filed their sixth Chapter 13 plan in February 2013, they did an about face.  The Fagos indicated they were rejecting the TADA lease because there was no lease to assume since it had been terminated by TADA due to their eviction.  Because there was no assumed lease, TADA's priority claim was extinguished, and TADA was relegated back to unsecured nonpriority creditor status.  This sixth plan came after the Fagos defaulted on their post-petition obligation to pay the August, September, and October 2012 rent to TADA, in addition to the $19,000 outstanding to cure the pre-petition default, and after TADA had sought relief from the stay to commence eviction proceedings.  This sixth plan also came after the Fagos voluntarily left the premises on January 31, 2013.

The bankruptcy court rejected the Fagos' sixth plan, and held them to their prior plan from June 2012, where the Fagos had assumed the lease, and TADA had a priority claim for the pre-petition default.  The bankruptcy court awarded TADA damages resulting from the post-confirmation breach of an assumed lease in the form of an administrative expense claim.

In their appeal, the Fagos challenge the bankruptcy's

determination to reject their sixth plan. The Fagos now consider themselves to have been tenants-at-will since the amended lease expired on September 30, 2007. The Fagos argue that because they did not have a valid lease with TADA, they could not assume a nonexistent lease or provide TADA with a priority claim for pre-petition obligations. The Fagos also argue that their status as tenants-at-will did not prevent TADA from commencing eviction proceedings against them at any time for their failure to comply with the consent judgment because, without a lease, TADA was not subject to the automatic stay.[2]

---

[2] Although it does not appear that the parties entered into formal amendments of the original lease to cover the entire twelve-year tenancy, it appears that until January 2013, both the Fagos and TADA proceeded under the understanding that the tenancy was governed by the terms of the 2004 lease. This type of arrangement would be considered a "month-to-month" tenancy rather than a "tenancy-at-will." See N.J.S.A. 46:8-10 ("Whenever a tenant whose original term of leasing shall be for a period of one month or longer shall hold over or remain in possession of the demised premises beyond the term of the letting, the tenancy created by or resulting from acceptance of rent by the landlord shall be a tenancy from month to month in the absence of any agreement to the contrary."); 34 Label St. Associates v. R.C. Search Co., No. A-4556-08T3, 2010 WL 1425723, at *2 (N.J. Super. Ct. App. Div. Apr. 8, 2010) ("Where a written lease expires, it is converted to a month-to-month tenancy, absent "any agreement to the contrary." N.J.S.A. 46:8-10. Thereafter, a holdover tenant of commercial space may be evicted on thirty days' notice. N.J.S.A. 2A:18-53(a)."); Stamboulos v. McKee, 342 A.2d 529, 530-31 (N.J. Super. Ct. App. Div. 1975) ("[A] month-to-month tenancy is a continuing tenancy, which does not give rise to a new relationship for each month. . . . [A] new tenancy was established only when the existing monthly tenancy was actually ended and the new one commenced."); cf. Katz v. Inglis, 109 N.J.L. 54, 55, 160 A. 314, 315 (1932)

In addition to the fact that it is unclear whether the Fagos presented this specific premise to the bankruptcy court when it rejected their sixth plan, the Fagos' five prior plans, all approved by the bankruptcy court, belie their change of course. It appears that when the Fagos realized that they would not be able to cure their pre-petition obligation to TADA, they attempted to negotiate with TADA. The details of the negotiation are not clear, but the Fagos contend that TADA agreed to accept the late payment of post-petition rent, allow the Fagos to abandon the property, and be relieved of their pre-petition debt on the consent judgment. The bankruptcy court rejected this change of position, particularly because the supposed negotiation was refuted by TADA.

As the bankruptcy court observed, the Fagos retained the protection of the automatic stay from being evicted for over a year while they repeatedly classified their relationship with TADA as an unexpired lease that they assumed. Moreover, they were able to continue their business operations uninterrupted,

---

("Where, as here, a tenant has entered premises under a void lease, without more, the tenancy is a tenancy at will."); McEowen v. Drake, 14 N.J.L. 523, 525 (1835) ("The [tenancy at will] doctrine is very distinctly laid down in Adams on Eject. 103-4-7, &c. edition of 1821; showing not only that a general occupation of lands creates [a tenancy at will], but also the nature of the few cases of tenancy at will, that occur in modern times.").

10

which benefited the bankruptcy estate as a whole. That the Fagos, after five modified plans, realized that they could not fulfill their obligations, should not cast error on the bankruptcy court for rejecting the Fagos' 11th hour attempt to re-categorize their relationship with TADA and wipe out a $19,000 pre-petition debt.

Instead of unilaterally modifying the assumption of a lease and acceptance of the obligation to cure the default to the rejection of a non-lease and be relieved of the obligation to cure the default because they realized that they could not afford the repayment obligations under their Chapter 13 plan, the Fagos should have sought to convert their bankruptcy to a more economically appropriate type. The debtors cannot blame the bankruptcy court for accepting and enforcing the plans that they themselves had proposed.[3]

---

[3] The Fagos' change in position is also contrary to the doctrine of judicial estoppel. As the Third Circuit explained,

> Judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from "playing 'fast and loose with the courts.'" Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir.1953) (citation omitted). "The basic principle ... is that absent any good explanation, a party should

Accordingly, the Court finds that the bankruptcy court committed no error in rejecting the Fagos' fifth modified plan and providing TADA, pursuant to 11 U.S.C. § 365(a), with a priority administrative claim for the balance of the Fagos' pre-petition debt.  The order of the bankruptcy court will be affirmed, and the Fagos' appeal dismissed.  An appropriate Order will be entered.


Date:  September 25, 2015          s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

    not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782.

Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).